Morrow, J.
The petition for authority to sell real estate filed herein sets forth that the Baptist Church of the West Fork of Mill-creek, Springdale road, Hamilton county, Ohio, is an unincorporated religious society under the laws of this state, for the purpose of religious and moral work. A descrip *492 tion of 0.213 acre is set forth, and the petitioner states that the church on said property has been abandoned, that no services have been held there for six years, that it was necessary to demolish the church, and it is necessary to sell the premises of said church property for $150.00, and that the premises described are not occupied or used’ as a burial place for the dead.
The petitioner represents that the petition is filed pursuant to a resolution unanimously passed by the board of trustees of said church at a special meeting held November 11, 1933, and that it is also the desire of the remaining members of said church to make said sale.
The petitioner -asks for an order authorizing* it to sell the described premises. This petition is signed by J. M. Stout, who states he is chairman of the board of trustees of said church, which, however, is described finally as “The Baptist Church of the West Fork of Millcreek of Mt. Healthy, Ohio, a religious corporation”.
To this petition for authority to sell an answer was filed by E. L. Hughes, who represents that he, together with many other residents of northern Hamilton county, are interested in the matter of the application contained in the petition. He says that the property described in the petition is contiguous to, and in reality a part of, a burial ground in which his ancestors are buried. He says that the entrance to the burial ground is over the premises sought to be sold, and that it would be inconvenient to construct a new entrance to the same.'
He further states that a sale of the said property would not be a benefit to the public generally, nor to any one in particular, and would be detrimental to the use of said burial ground.
He therefore asks that the petition “be not allowed”.
A trial was had of the above case which was attended by a number of people not formally parties to the litigation, but who testified on the apparent assumption that they were actual, if not formal, litigants.
In the early part of the nineteenth century a number of Baptist churches were established by the pioneers of Hamilton county. The baptisms of new members were cele *493 brated in the nearest stream, and the churches were named after those streams in most instances.
The church we are concerned with now then held its baptismal services in the West Fork of Millcreek, and hence the name.
The church was situated on a beautiful eminence in the northern part of this county, but the settlement nearby from which the congregation was recruited has dwindled in population, or, at all events, the Baptist population has decreased.
The church was a wooden structure, and because of the inroads of time, it became unsafe for occupancy. About seven years ago, for this reason, it was abandoned as a house of worship. Over a year ago, as an ultimate safety precaution, the church was torn down.
The evidence indicates that there are surviving three trustees, and in addition, there are two other members of the congregation. These five persons are all members of the Stout family. However, the religious services are held at the home of John M. Stout, one of the trustees, and evidence indicates that some twenty people attend. The Stout home is in the vicinity of the church property sought to be sold.
One of the trustees testified that a Baptist minister comes from Xenia, Ohio, to hold the services, and the proceeds derived from the sale of the church property are desired that they may be used to pay the honorarium and expenses of that minister; and thereby the financial burden resting upon those in attendance would be lightened.
The parties agreed that the court should view the premises, and this was done. The following further facts the court finds to have been established:
1. The petitioner is an unincorporated religious association (not incorporated as stated in the jurat) and has authority, pursuant to Section 10051 to sell its real estate. The court finds that the real estate set forth in the petition is the property of the petitioner.
Section 10051 provides in part:
“When a charitable or religious society or association desires to sell any real estate owned by it * * * except *494 grounds used or occupied as burial places for the dead, the trustees * * * holding the title to such property * may file a petition stating * that such association desires to make the sale and setting forth the object thereof. If upon the hearing of the case it appears that such sale * is desired by the members of the society or association and that it is right and proper that authority be given to accomplish it, the court may authorize the trustees of the society or association to sell in accordance with the prayer of the petition.” *
The original deeds whereby the entirety of the property was obtained by the petitioner contain no limitation as to ownership (as for church purposes, for instance) but are outright grants of the fee for a money consideration.
2. The present trustees are the successors to the original trustees to whom the property (of which this tract is a part) was conveyed. A trustees’ meeting has been held and the preliminary requirements necessary for submission of the matter to this court have been accomplished.
3. No question was raised as to whether the intervener, E. L. Hughes, and others who appeared with him had any standing in court. In view of the statutory provision for application for authority contained in Section 10051, and in view of the provisions of Section 10052, which provide for “notice of the pendency and prayer of the petition to be published in some newspaper of general circulation in the county where the real estate proposed to be sold, leased, exchanged or incumbered is situated, for four consecutive weeks, before the application is heard,” we take it that it is the plain intendment of the law to provide for protest on the part of any one claiming an interest in the property sought to be sold. It will be noted that the authority to sell is given only except as to grounds used or occupied as burial places for the dead. It will be noticed also that the court must find it “is right and proper” that authority be given to. accomplish the sale.
In view of the above, and upon the broad principles of equity, we are considering the answer filed by Mr. Hughes in behalf of himself and others, and their testimony in court in opposition to the petition. It might be urged that *495 the interest of the interveners is nothing more than a sentimental interest. They are objecting because their ancestors are buried in the graveyard, which extends east from the immediate church site. Sentiment is a powerful factor in our lives, and under the circumstances, we consider the interest of the interveners so substantial as to give them an undoubted standing in court.
4. We find it proved that the burial ground east and adjacent to the immediate church site contains the remains of the ancestors of the formal intervener Hughes, as well as the remains of the ancestors of a number of others who appeared to protest against the sale.
We further find that the entrance to the burial ground is over the premises sought to be sold, and that it would be inconvenient to construct a new entrance to the same. We also find that it would be detrimental to the use of said burial ground to allow the sale of the tract sought to be alienated at this time by the trustees.
The immediate site of the old church and the cemetery, enclosed by the same fence, are located on the north side of Springdale road, near Pippin road. The church was situated on the west end of the lot and upon the property set forth by description in the petition. The cemetery extends east from the east side of the church to the fence, which marks the east boundary of the entire tract belonging to the petitioner. This property constitutes a country churchyard similar to the one which inspired Gray’s Elegy.
The property is somewhat over an acre in extent and averages four feet higher than Springdale road. A drainage ditch on the side of the road extends between the road and the southern fence of the property. An entrance in the fence, is located, as intervener Hughes asserts, near the west end of the south fence and on the property sought to be sold.
A cemetery must have an approach. In fact, Sections 4202, 4203, 4204 and 4205 provide for appropriation of approaches for public cemeteries. I cite this merely to show that our legislature has recognized the importance of a cemetery approach.
*496 The physical situation we have described generally. Specifically, it should be said that gravestones extend from the immediate site of the old church on the west to within a few feet of the east fence of the property. Obviously, it would be improper to build another entrance, which would mean that a funeral vehicle could not enter and turn around without traversing hallowed ground, and probably not without the necessity of removal of certain old gravestones. The evidence indicates that when funerals are held the cortege departs from Springdale road into the church property at the entrance above mentioned, and that the vehicles stood near the front of the church during the interments.
It has not been proved that the cemetery is occupied entirely, and as matters stand it will be necessary for a funeral cortege to halt out in the road unless the property sought to be sold is retained as an approach to the cemetery.
The first minutes of this old church date back to 1810, and some of the gravestones show dates a century old. A decent respect for the dead has marked civilization from the earliest times, and a violation of the sentimental feelings of many good people would result if this court would authorize the $150.00 sale petitioner seeks authority to accomplish. The benefit to the living from the expenditure, as outlined, of the $150.00, is greatly outweighed by the considerations above stated, and in view of the finding of facts herein set forth, the petition of the trustees of the church for permission to sell the real estate described in the petition is denied.